IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:06-CV-164-D

| | |
|---|---|
| ROBERT M. ZANE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

In this action, plaintiff Robert M. Zane ("plaintiff") challenges the final decision of defendant Commissioner of Social Security ("Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB") on the grounds that plaintiff is not disabled. The case is before the court on the parties' respective motions for judgment on the pleadings. (DE #9, 13). The motions were referred to the undersigned Magistrate Judge for memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (DE #19). For the reasons set forth below, it is recommended that defendant's motion be allowed, plaintiff's motion be denied, and the final decision of the Commissioner be affirmed.

## I. BACKGROUND

### A.   Case History

Plaintiff filed an application for DIB on 30 September 2004, alleging a disability onset date of 5 June 2000 due to post-traumatic stress disorder ("PTSD"), depression, irritable bowel syndrome ("IBS"), and nephritis (*i.e.*, kidney inflammation).[1] Transcript of Proceedings ("Tr.") 61, 64-65. The

---

[1] The medical records do not contain any reference to this alleged impairment, and plaintiff apparently abandoned it as a basis for his claim.

application was denied initially, *id.* 32, and again upon reconsideration, *id.* 37, and a request for hearing was timely filed, *id.* 40. On 26 July 2005, a hearing was held before an Administrative Law Judge ("ALJ"). *Id.* 279-326. The ALJ issued a decision denying plaintiff's claim on 25 January 2006.[2] *Id.* 15-28. Plaintiff timely requested review by the Appeals Council, *id.* 11, and submitted one additional exhibit, *id.* 7, 274-78. The Appeals Council considered the additional evidence and denied the request for review on 31 August 2006. *Id.* 4-7. At that time, the decision of the ALJ became the final decision of the Commissioner. *See* 20 C.F.R. § 404.1581. Plaintiff commenced this proceeding for judicial review on 30 October 2006, pursuant to 42 U.S.C. § 405(g).

B.  **Standards for Disability**

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The Act goes on to describe disability more specifically in terms of impairments:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. § 423(d)(2)(A).

The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically

---

[2] The court notes that the ALJ's decision is incorrectly date stamped "JAN 25 2005."

acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The burden of proving disability falls upon the claimant. *English v. Shalala*, 10 F.3d 1080, 1082 (4th Cir. 1993).

The disability regulations under the Act ("Regulations") provide the following five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R. § 404.1509], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. Part 404, subpt. P, app. 1] . . . and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such

3

impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. If a medically severe combination of impairments is found, the combined impact of those impairments will be considered throughout the disability determination process. *Id.*

## C. Findings of the ALJ

Plaintiff was fifty-three years old on the alleged onset date of disability and fifty-nine years old on the date of the administrative hearing. Tr. 16, 26, 71. Plaintiff has a college education and his past work experience included employment as a textile sales representative, retail sales manager, and laborer. *Id.* 16.

Applying the five-step analysis of 20 C.F.R. § 404.1520(a)(4), the ALJ made the finding at step one that plaintiff had not engaged in substantial gainful activity since his alleged onset of disability, even though plaintiff earned over $8,100 and $1,700 in 2000 and 2001, respectively. Tr. 16, 21, 27 ¶ 2. The ALJ believed that additional information was needed to resolve definitively whether plaintiff's work in 2000 and 2001 was substantial gainful employment, but made the finding that it was not (in plaintiff's favor) because he was denying plaintiff's claim at step five anyway and did not want to delay issuing his decision. *Id.* 16-17. At step two, the ALJ found that plaintiff had the following medically determinable impairments which were severe within the meaning of the Regulations, 20 C.F.R. § 404.1520(c): PTSD and IBS. Tr. 22, 27 ¶ 3. At step three, however, the ALJ found that plaintiff's impairments did not meet or medically equal one of the listed impairments in appendix 1 to 20 C.F.R. part 404, subpart P. Tr. 22, 27 ¶ 4.

At step four, the ALJ determined that plaintiff had the RFC to perform a job in a low-stress environment, specifically in a non-production setting, with no contact with the general public and only occasional contact with co-workers, but without any exertional limitations. *Id.* 24, 27 ¶ 6.

Based on this RFC, the ALJ found that plaintiff could not perform any of his past relevant work but possessed transferable skills from skilled work previously performed. *Id.* 25-26, 28 ¶ 10. At step five, the ALJ adopted the testimony of a vocational expert ("VE") and found that, based on plaintiff's RFC, age, educational background, and work experience, he was capable of making a successful adjustment to work that exists in significant numbers in the national economy, including the unskilled medium/heavy jobs of night cleaner, warehouse worker, and kitchen hand. *Id.* 26-27, 28 ¶ 12.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See, e.g., Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

5

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

**B.     Overview of Plaintiff's Contentions**

Plaintiff contends that the ALJ's decision should be reversed on the principal grounds that the ALJ failed to: (1) properly evaluate plaintiff's PTSD and IBS; (2) give appropriate weight to the opinions of two non-physician health practitioners; (3) properly assess plaintiff's credibility; and (4) pose a proper hypothetical to the VE. As a consequence of the first three deficiencies, plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence, as required. As a consequence of the fourth deficiency, plaintiff argues that the ALJ's determination based on the VE's testimony that there are jobs available to plaintiff is not supported by substantial evidence. Each of the enumerated contentions is examined in turn below.

6

## C. Evaluation of Plaintiff's PTSD and IBS

### 1. PTSD

Plaintiff contends that the ALJ erred by finding that plaintiff's PTSD, which plaintiff relates to his service in Vietnam in the 1960's, was adequately addressed in the RFC by restricting him to work in a low-stress, non-production, environment. Instead, plaintiff contends that the record compels the determination that he is too volatile and otherwise too limited by PTSD to work. The court finds that the ALJ's determination is supported by substantial evidence.

The ALJ based his determination regarding plaintiff's PTSD on, among other evidence, the fact that plaintiff received only minimal treatment for PTSD and has never been hospitalized for it. Tr. 24. Consistent with this finding, the first documented treatment of plaintiff for PTSD began in 1994, when he attended a group therapy session in New York, and ended in 1995. *Id.* 228, 231-32, 303. He did not resume group therapy until 21 August 2003, over three years after his alleged onset of disability. *Id.* 222, 303. Plaintiff has continued with group therapy two times a month, *id.* 294, and at the hearing stated that he would be seeing a therapist once a month, *id.* Since about 2002, plaintiff has taken medication for PTSD, which he testified has helped control his mood and violent outbursts. *Id.* 291-92, 302. He also confirmed at the hearing that he has never been hospitalized for PTSD. *Id.* 304.

The ALJ also relied on the mental status examination performed on plaintiff on 29 May 2003. *Id.* 24. Although plaintiff's PTSD had purportedly been aggravated a month before by his son's incarceration for federal drug-related charges, *id.* 17, 237-38, the May 2003 examination revealed that plaintiff was alert and well oriented, and had no suicidal or homicidal ideation or hallucinations.

7

*Id.* 17, 24, 231. The record of this examination also states that plaintiff has had only a single major depressive episode. *Id.* 17, 234.

In addition, the ALJ pointed to the mental RFC and psychiatric review technique findings of a state agency non-examining consultative psychologist, Arlene M. Cooke, Ph.D., dated 23 February 2005. *Id.* 24, 96-113. Dr. Cooke found that plaintiff had moderate limitations in his activities of daily living, social functioning, concentration, pace, and persistence, but no repeated episodes of decompensation of an extended duration. *Id.* 96-97, 110. As the ALJ noted, *id.* 19, Dr. Cooke concluded that "[p]rior to [the date he was last insured] . . . [plaintiff] was capable of SRRT's [*i.e.*, simple, routine, repetitive tasks] in a low-stress setting [with] limited social interactions." *Id.* 98. The ALJ recognized that findings from such a non-examining source do not generally deserve as much weight as those of an examining or treating physician, but did ascribe "some weight" to the findings here because of their consistency with other evidence in the record. *Id.* 24; *see Johnson v. Barnhart*, 434 F.3d 650, 657 (4th Cir. 2005); 20 C.F.R. § 404.1527(d)(1), (f). The ALJ incorporated into his RFC determination Dr. Cooke's opinion that plaintiff required a low-stress work environment with little social interaction. Tr. 24, 27 ¶ 6.

The ALJ also applied the special technique for mental impairments required by 20 C.F.R. § 404.1520a.[3] Tr. 19; *see also id.* 110. He found that plaintiff's PTSD places no limitations on his activities of daily living. *Id.* 23. The ALJ cited to evidence of plaintiff's ability to do cleaning and

---

[3] Under the special technique, an ALJ is to rate the degree of a claimant's functional limitation in four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). The first three functional areas are rated on a five-point scale: none, mild, moderate, marked, and extreme. *Id.* § 404.1520a(c)(4). A four-point scale is used to rate the fourth functional area: none, one or two, three, and four or more. *Id.* The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity. *Id.* The ALJ is also required to document in his decision his application of the special technique. *Id.* § 404.1520a(e).

8

maintenance work at his home, help a friend refurbish plaintiff's home, run errands, care for his disabled sister, take family members to the doctor's office, and take vacations outside the state and the country. *Id.* 23, 295-99, 307.

The ALJ found marked limitations in social functioning, based on a violent confrontation plaintiff had with someone in his wife's store (in which plaintiff grabbed the other person), *id.* 291, and a confrontation with his boss when he worked at Habitat for Humanity (as a result of which he was fired for using foul language), *id.* 289. The ALJ found that plaintiff has no deficiencies in concentration, persistence, or pace, based on various activities he performs, and has had no episodes of decompensation of an extended duration. *Id.* 23.

In evaluating plaintiff's mental capacity, the ALJ stated that he considered all the relevant evidence to obtain a longitudinal picture of plaintiff's overall degree of functional limitation. *Id.* 22. The ALJ's evaluation encompassed conditions such as panic attacks and depression, which can be associated with PTSD. *Id.* 17, 22; *see* Amer. Psych. Assn., *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV-TR"), p. 465 (4th ed. 2000). The ALJ acknowledged specifically his consideration of any episodic limitations on plaintiff.[4] *Id.* 22.

Plaintiff contends that the violent or potentially violent episodes he has had render him unable to work. The court disagrees.

Plaintiff points specifically to: (1) his discharge from his group therapy program in 1995 because of threats to the facilitator, *id.* 231, 303; (2) the incident at Habitat for Humanity in 2000, *id.* 229, 289; (3) his resignation from a job at Factory Tile Outlet in 2001 for fear he would become violent with the foreman, *id.* 287; (4) an incident in a restaurant in 2003, *id.* 222-23; and (5)

---

[4] The court has also taken into account the potentially episodic effects of PTSD, as well as IBS.

exacerbation of his symptoms in May 2004 due to events in Iraq, *id.* 190. Plaintiff's contention therefore rests on only five events in about ten years, three of them in the five years preceding the hearing. Dr. Cooke confirmed that plaintiff has not experienced repeated episodes of decompensation. *Id.* 110. Moreover, as the ALJ appeared to recognize, only the non-work-related incident at the restaurant resulted in actual physical contact by plaintiff. *See id.* 25. The event at Habitat for Humanity is distinguishable because plaintiff was a manager there, supervising others, a position he would probably not hold under the ALJ's low-stress, minimal social interaction RFC. *Id.* 288. In addition, plaintiff acknowledged at the hearing that his medication has helped him control his mood and violent tendencies. *Id.* 291-92, 302. The ALJ noted this point in his review of plaintiff's testimony. *Id.* 20; *see Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it not disabling.").

Plaintiff also contends that the moderate rating Dr. Cooke provided with respect to various specific work skills of plaintiff, including particularly working with a schedule and maintaining attendance, indicate that he cannot work on a sustained basis. As discussed, however, Dr. Cooke found that plaintiff could perform certain work in a low-stress setting with limited social interaction. Tr. 98. Moreover, under the Regulations, a moderate limitation with respect to a mental impairment does not presumptively indicate a disabling impairment, as would a finding of extreme limitation. *See* 20 C.F.R. § 404.1520(c)(4), (d)(1)-(3); *see also White v. Barnhart*, 454 F. Supp. 2d 609, 615 (E.D. Tex. 2006) (findings of moderate limitation indicated on form similar to those here not proof of disabling impairment). The record certainly did not compel the ALJ to adopt the proposition, as plaintiff posited to the VE at the hearing in hypothetical terms, that plaintiff would be absent more than three cumulative days during a twenty-day schedule. Tr. 320, 324. The ALJ stated that he

10

considered specifically whether plaintiff had the ability to work on a sustained basis (*i.e.*, five eight-hour days a week or an equivalent schedule) and found that he did. *Id.* 24-25. For this and the other reasons discussed, the court should reject plaintiff's challenge to the ALJ's evaluation of his PTSD.

### 2. IBS

Plaintiff also disputes the determination by the ALJ that, while plaintiff's IBS is severe, it does not place significant limitations on his ability to perform work-related activities. *See id.* 24-25. The court finds that substantial evidence supports the ALJ's determination.

Although plaintiff claims that he began suffering IBS in 1994, *id.* 299, and was diagnosed in 1998, *id.* 253, the earliest specific bout reflected in the record was in March 2001, *id.* The next reported bout was in September 2003. *Id.* 217. At intervening and subsequent visits, the medical records show that plaintiff did not report IBS symptoms. *Id.* 253 (8/26/02), 240 (4/17/03), 204 (1/30/04), 175 (10/8/04). Therefore, in the period from March 2001 to October 2004, plaintiff reported only two episodes. Examinations of plaintiff relating to IBS during this period were normal. *Id.* 240 (4/17/03), 175 (10/8/04). This evidence is discussed at length by the ALJ. *Id.* 17-19, 21, 24.

The ALJ also found that the record does not document any treatment of plaintiff for IBS prior to the termination of his disability coverage on 30 September 2001. *Id.* 21, 24. Although plaintiff challenges this finding, he relies on a note from September 2002 stating that plaintiff's IBS was "severe enough once or twice a year to warrant attention medically in the hospital." *Id.* 253. However, the record does not establish that plaintiff was actually hospitalized on such occasions. There are no records of any such hospitalizations in the case file.

11

At the hearing in July 2005, plaintiff characterized his IBS in stark terms. He claimed that it had worsened since 2001; he was incontinent about twice a week; about once a month, he was bed ridden from three to four days; and he had suffered two episodes in the last month.[5] *Id.* 19, 299-301. The ALJ determined, however, that plaintiff's testimony was not fully credible. *Id.* 21, 27 ¶ 5. As discussed further below, the court finds this determination to be supported by substantial evidence.

Plaintiff also complains that the ALJ failed to include any limitations from the IBS in the RFC. Again, the court disagrees. Plaintiff himself testified that his psychiatrist attributed his IBS to stress. *Id.* 300, 304.[6] The ALJ's requirement in the RFC that plaintiff work in a low-stress environment is therefore directly responsive to plaintiff's IBS.

Plaintiff also argues that the ALJ failed to consider the notion, expressed in a notation in the medical records, that plaintiff's bouts of IBS reminded him of the dysentery he had in Vietnam and caused him flashbacks. *Id.* 124. The contention is meritless. The argument was raised before the ALJ at the hearing. *Id.* 283; *see also id.* 300 (plaintiff relates IBS to dysentery). The ALJ discussed both plaintiff's PTSD and IBS extensively. *Id.* 17-24. He also noted expressly that he had considered seemingly all aspects of plaintiff's PTSD. *Id.* 22. For this and the other reasons stated, plaintiff's challenge to the ALJ's IBS evaluation should be denied.

---

[5] Plaintiff also testified, inconsistently, that three months prior to the hearing he "finally got the right medication" for his IBS. Tr. 299.

[6] *See also* Tr. 216 (notation from Veterans Administration clinic on 23 September 2003 stating: "Discussed relation of stress and bowel function").

12

### D. Non-Physician Opinions

Plaintiff contends that the ALJ erred by not giving any weight to the opinions of psychiatric nurse practitioner Edith D'Aquila-Lloyd ("D'Aquila-Lloyd") and social worker Joanne Bagby ("Bagby") to the effect that plaintiff is disabled. The court does not agree.

D'Aquila-Lloyd evaluated plaintiff at a Veterans Administration facility on a frequent basis from May 2003 to around March 2005, although she did not appear to serve as a therapist. *Id., e.g.,* 149, 231. In a one-page letter dated 30 April 2004 and addressed "To whom it may concern," D'Aquila-Lloyd provided a summary of plaintiff's history of PTSD, stating that he had become seriously ill with it in 1994, it led to his abusing alcohol, and he was now attending group therapy and being evaluated psychiatrically on a frequent basis. *Id.* 272. She described plaintiff's PTSD as "longstanding, chronic [,] and very severe." *Id.* D'Aquila-Lloyd opined that plaintiff "is severely incapacitated by his PTSD and resultant mood disorder" and that he was "too volatile to work and could pose a threat to co-workers." *Id.* Notwithstanding the apparent conclusive nature of these opinions, she states, "Mr Zane should be evaluated for his PTSD and inability to work." *Id.*

Bagby saw plaintiff at a Veterans Administration facility on a regular basis between May 2003 and July 2005 in her capacity as a facilitator of the therapy group plaintiff attended. *Id., e.g.,* 117, 227. The record includes a one-page letter, dated 6 May 2004 and addressed "To Whom It May Concern," which Bagby wrote "in support of [plaintiff's] claim for service connection compensation for his diagnosis of [PTSD]." *Id.* 271. The letter contains a brief review of Bagby's evaluation of plaintiff at her initial visit with him a year before, a summary of his history with PTSD, and a review of his current participation in group therapy. *Id.* The letter concludes, "In my opinion, this veteran is truly deserving of a service connected *pension* for his PTSD." *Id.* (emphasis added). In his

13

decision, the ALJ reviews the opinions expressed by D'Aquila-Lloyd and Bagby. *Id.* 18. He expressly gave no weight to their opinions that plaintiff cannot work. *Id.* 23.

In doing so, the ALJ correctly recognized that D'Aquila-Lloyd and Bagby, as non-physicians, are not "acceptable medical sources" under the Regulations.[7] *Id.* 24; 20 C.F.R. § 404.1513(d). Instead, they constitute "other sources" of evidence that may be used to evaluate a claimant's ability to work, but their opinions are not deemed medical evidence. Tr. 24; *see also Craig*, 76 F.3d at 590. In short, they are generally accorded significantly less weight than those of physicians.

The ALJ also based his rejection of the non-physician opinions that plaintiff could not work on the grounds that they were inconsistent with the objective medical evidence and rested primarily on plaintiff's subjective complaints. Tr. 23. Indeed, both letters contain scant objective medical evidence. In addition, the ALJ found these opinions inconsistent with plaintiff's activities of daily living as well as plaintiff's own statements. *Id.* These statements include repeated representations by plaintiff between April 2003 and March 2005 to the effect that he was doing well. *Id.* 24. The court finds that substantial evidence supports these findings by the ALJ.[8]

Furthermore, opinions by D'Aquila-Lloyd and Bagby that plaintiff cannot work are opinions on the ultimate issue of disability—an issue reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e)(1), (3); Soc. Sec. R. 96-5p. No special significance is to be attributed to the sources of

---

[7] The ALJ expressed similar concerns at the hearing in a discussion with plaintiff's counsel regarding the opinions of D'Aquila-Lloyd and Bagby. Tr. 282-85.

[8] Although not expressly relied on by the ALJ, his rejection of D'Aquila-Lloyd's and Bagby's opinions is also supported by evidence of the inconsistency of these opinions with their own findings. *See* Soc. Sec. R. 06-03p. For example, in May 2003, D'Aquila-Lloyd gave plaintiff a Global Assessment of Functioning ("GAF") rating of 55, which indicates only moderate limitations in social and occupational functioning. Tr. 234; *see* DSM-IV-TR, p. 34. The ALJ noted the GAF rating in his general review of the medical evidence. Tr. 17.

14

such an opinion. *Id.* Bagby's apparent confusion of qualification for Social Security disability benefits with entitlement to a pension confirms the wisdom of this principle.

After the ALJ issued his decision but before the Appeals Council ruled, a ruling on the interpretation of non-physician opinions, Soc. Sec. R. 06-03p, became final. *See* 71 Fed. Reg. 45593 (9 Aug. 2006). That ruling states that the ALJ should evaluate opinions from "other medical sources," such as nurse practitioners and social workers, using the same factors applicable to the evaluation of opinions from medical sources, 20 C.F.R. § 404.1527(d), and that the ALJ should explain the weight given such non-physician opinions. *See* Soc. Sec. R. 06-3p. Some courts have declined to give the ruling retroactive effect. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541-42 (6th Cir. 2007); *but see Sloan v. Astrue*, 499 F.3d 883, 889 (8th Cir. 2007) (retroactive effect given where application of ruling could have led to different outcome).

Nevertheless, the ALJ did look to the consistency of D'Aquila-Lloyd's and Bagby's opinions with other evidence and did adequately explain the weight he gave these opinions, as Ruling 06-3p counsels. The ALJ also cited to Soc. Sec. R. 96-2p. Tr. 23. Like Soc. Sec. R. 06-3p, it directs that the ALJ consider the factors in 20 C.F.R. § 404.1527 albeit in the context of assessing treating source medical opinions not entitled to controlling weight. The ALJ also cited to 20 C.F.R. § 404.1527. Tr. 23. The ALJ therefore appears to have followed the principles that were later formally embodied in Soc. Sec. R. 06-3p. For these and the other reasons set out, plaintiff's challenge to this aspect of the ALJ's decision should be rejected.

### E. Assessment of Plaintiff's Credibility

Plaintiff argues that the ALJ's refusal to fully credit plaintiff's testimony regarding his alleged limitations is not supported by substantial evidence. The court disagrees.

Here, with respect to his PTSD, plaintiff testified that he has regular, severe flashbacks, panic attacks, and nightmares; cannot tolerate being around other people in public settings such as grocery stores and doctor's offices; and experiences violent impulses. Tr. 291-95, 297-98, 302-03. Regarding his IBS, plaintiff testified, as indicated, that he is incontinent weekly, is bed ridden for several days each month, and had suffered two bouts in the last month. *Id.* 19, 299-301.

As noted, this court is not permitted to make credibility assessments, but must determine if the ALJ's credibility assessment is supported by substantial evidence. *Craig*, 76 F.3d at 589. The ALJ's assessment involves a two-step process. First, the ALJ must determine whether plaintiff's medically documented impairments could cause plaintiff's alleged symptoms. *Craig*, 76 F.3d at 594-95. Next, the ALJ must evaluate plaintiff's statements concerning those symptoms. *Craig*, 76 F.3d at 595. If the ALJ does not find plaintiff's statements to be credible, the ALJ must cite "specific reasons" for that finding that are "grounded in the evidence." *Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006) (quoting Soc. Sec. R. 96-7p).

Here, at step one of the credibility assessment, the ALJ did determine that plaintiff has medically documented impairments that could cause his alleged symptoms, and neither party contends to the contrary. The ALJ's determination is apparent from his findings, among others, that plaintiff has the severe impairments of PTSD and IBS, which he made after a methodical review of plaintiff's medical records. Tr. 18-23.

At the second step, the ALJ concluded that "the claimant's allegations regarding his limitations are not totally credible." *Id.* 27 ¶ 5; *see also id.* 21. In reaching this conclusion, the ALJ explained at length and in detail the numerous inconsistencies he found between plaintiff's allegations that his PTSD, IBS, and other symptoms are essentially disabling, and the medical and

16

other evidence. *Id.* 21-22. For example, the ALJ points out that plaintiff's treating physicians have placed no specific restrictions on him; the treatment he receives is routine, conservative, and effective according to the medical records; he engages in a broad range of activities of daily living, which have included work activity; and he was not truthful at the hearing regarding his use of alcohol. *Id.* 22. There is substantial evidence in the record supporting each of the specific findings the ALJ makes regarding plaintiff's credibility.

Because the ALJ cited specific reasons for his credibility determination, it is adequately based on facts in the record and his determination is supported by substantial evidence. Plaintiff's challenge to the ALJ's credibility determination should accordingly be denied.

With this ruling by the court, each of the three principal grounds upon which plaintiff disputed the ALJ's RFC determination—the ALJ's evaluation of plaintiff's PTSD and IBS, his treatment of the non-physician opinions, and his credibility determination—have been found to be baseless. The RFC is otherwise supported by substantial evidence. The court accordingly finds that plaintiff's challenge to the RFC determination fails.

### F.     Hypothetical Posed to the VE

Plaintiff argues that the hypothetical that the ALJ posed to the VE was erroneous because it did not include all limitations on plaintiff. The court disagrees.

In order for the opinion of a VE to be helpful, it must be "in response to proper hypothetical questions which fairly set out all of [a] claimant's impairments." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). A hypothetical question is proper if it adequately reflects a claimant's RFC for which the ALJ had sufficient evidence. *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005).

The VE must accept as true the RFC as determined by the ALJ. *Hines v. Barnhart*, 453 F.3d 559, 566 n.5 (4th Cir. 2006).

Plaintiff's contention that the hypothetical did not accurately reflect his limitations is based on his view that the ALJ's RFC determination was incorrect. The court has found, however, that the ALJ's RFC determination is supported by substantial evidence. The ALJ therefore did not act improperly in relying on the VE's testimony that was premised on this hypothetical. Plaintiff's challenge to this aspect of the ALJ's decision should accordingly be denied.

### III. CONCLUSION

For the foregoing reasons, the court finds that the ALJ's decision is supported by substantial evidence in the record and that the ALJ applied the proper legal standards, including in particular with respect to the ALJ's determinations regarding plaintiff's RFC and the availability of jobs to him in the national economy. IT IS THEREFORE RECOMMENDED that defendant's motion for judgment on the pleadings be ALLOWED, plaintiff's motion for judgment on the pleadings be DENIED, and the final decision of the Commissioner be AFFIRMED.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten business days to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge.

This, the 31st day of December, 2007.

*James E. Gates*
United States Magistrate Judge